UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE MATHENA,

    Plaintiff,

v.

THE BANK OF NEW YORK MELLON
F/K/A THE BANK OF NEW YORK,
as Trustee for the CERTIFICATEHOLDERS
OF CWALT, INC., alternative LOAN
TRUST 2005-J5 MORTGAGE PASS-
THROUGH CERTIFICATES SERIES 2005-J5;
RESIDENTIAL CREDIT SOLUTIONS, INC., and
DITECH,

    Defendants.
_____/

Civil Case No. 16-11195
Honorable Linda V. Parker

**<u>OPINION AND ORDER GRANTING (1) DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS' AND THE BANK OF NEW YORK MELLON'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND (2) DITECH'S MOTION TO DISMISS</u>**

This action arises from Plaintiff Christine Mathena's default on a mortgage loan and the subsequent actions to collect the amount due. In an Amended Complaint filed June 10, 2016, Mathena alleges two counts: (1) violation of the Fair Debt Collections Practices Act ("FDCPA") by Defendant Residential Credit Solutions, Inc. ("RCS") and The Bank of New York Mellon ("BNYM") and (2) violation of the FDCPA by Defendant Ditech. Presently before the Court are two motions: (1) RCS' and BNYM's motion to dismiss and/or summary judgment,

filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, respectively; and (2) Ditech's motion to dismiss, filed pursuant to Rule 12(b)(6).  The motions have been fully briefed.  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## Applicable Standards

### Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Twombly*,

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they

are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## Rule 56 Motion for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence

upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

**Factual Background**

The Court begins by setting forth the facts as alleged in Plaintiff's Complaint.

In March 2005, Plaintiff accepted a loan from Quicken Loan, Inc. ("Quicken), secured by a mortgage ("Mortgage") on property located at 1586 Merrill, Lincoln Park, Michigan ("Property").  (Am. Compl. ¶¶ 12, 13, Ex. A, ECF No. 16-1.)  The Mortgage identifies Mortgage Electronic Registration Systems, Inc. ("MERS") "as a nominee for [Quicken] and [Quicken]'s successors and assigns" and as the "mortgagee[.]"  (*Id.*, Ex. A, ECF No. 16-1.)

In a letter to Plaintiff dated January 25, 2014, RSC stated it is the servicer of the mortgage loan and that "[t]his notice is to serve as validation of the above

referenced debt as required by the [FDCPA]." (*Id.*, Ex. B, ECF No. 16-2.) The letter includes, among other things, the original loan amount, the current principal balance, the name of the creditor, the total debt, the escrow balance, and the payment address. (*Id.*) It also contains the following statement:

> You must notify RCS, either orally or in writing, to dispute the debt or any portion thereof. If you want verification of the debt, you must notify RCS in writing that you dispute the debt or any portion thereof, post marked within 30 days of receipt of this letter. Upon such written notice, timely given, RCS will obtain verification of the debt or a copy of the judgment against you, the consumer. … If no written notice is mailed to RCS within the 30 day period, RCS will assume the debt is valid. …

(*Id.*) RCS also informs Plaintiff that it will provide the name and address of the original creditor if requested within thirty days. (*Id.*)

On April 21, 2014, an Assignment of Mortgage was executed, assigning the Mortgage from Quicken to BNYM, as Trustee for the Certificatholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-J3, Mortgage Pass-Through Certificates, Series 2007-J3. (*Id.*, Ex. C, ECF No. 16-3.) This Assignment was recorded in the Wayne County Register of Deeds on April 23, 2014 at Liber 51495, Page 1301. (*Id.*)

On August 19, 2014, an Assignment of Mortgage was executed, assigning the Mortgage to BNYM as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-J5 Mortgage Pass-Through Certificates, Series 2005-

J5. (*Id.*, Ex. D, ECF No. 16-4.) This Assignment was recorded in the Wayne County Register of Deeds on August 26, 2014, at Liber 51716, Page 350. (*Id.*)

Trott Law, P.C. ("Trott"), as "Attorneys for Servicer,"[1] sent Plaintiff a "Notice of Mortgage Foreclosure Sale" ("Foreclosure Notice"), dated May 20, 2015. (*Id.*, Ex. E, ECF No. 16-5.) The Foreclosure Notice states, in part, that a default has been made in the conditions of the Mortgage, with $97,191.04 due on the date of the notice, and that the "mortgage will be foreclosed by a sale of the mortgaged premises … on June 18, 2015." (*Id.*)

Plaintiff, through counsel, sent a letter to Trott dated August 19, 2015. (*Id.*, Ex. F, ECF No. 16-6.) In the letter, Plaintiff's counsel acknowledges receiving "a debt collection communication from your company stating that Trott Law, P.C. … has been retained by Residential Credit Solutions … to foreclose the mortgage loan …." Plaintiff's counsel asserts that "[p]ursuant to the Fair Debt Collections Practices Act … Trott Law has failed to validate the purported indebtedness allegedly secured by the above referenced mortgage loan account." (*Id.*) Plaintiff's counsel further states:

> As a result, Ms. Mathena request[s] that Trott Law cease its collection efforts until Trott Law … verifies and validates the purported debt as required by 15 USC § 1692. In validating the debt, please provide a clear and

---

[1] The Notice of Foreclosure does not identify the servicer. Nevertheless, as indicated earlier, RCS informed Plaintiff in its January 25, 2014 letter that it was servicing the loan.. (*See* Am. Compl., Ex. F, ECF No. 16-6.)

4:16-cv-11195-LVP-EAS   Doc # 25   Filed 11/23/16   Pg 8 of 16   Pg ID 446

> unambiguous statement as to the identity of the owner of the mortgage, the note and the servicing agent.

(*Id*.)

RCS sent a letter to Plaintiff, dated September 11, 2015, "in response to the request received by [RCS] for the loan referenced above." (*Id*., Ex. G, ECF No. 16-7.) RCS writes:

> Although your verbal dispute was captioned as a Qualified Written Request (as defined under the Real Estate Settlement Procedures Act …) it is our determination that it does not qualify for such treatment, as we were unable to find reference to a specific allegation of inaccurate servicing. RCS is required by RESPA to provide information regarding the servicing of the loan or respond to a statement about why you think the servicing of the account is in error.

(*Id*.) RCS advises Plaintiff that if she is "questioning a specific event with respect to this account, or ha[s] a specific allegation of improper servicing," she should so advise RCS in writing. (*Id*.) RCS enclosed a copy of Plaintiff's "payment history" with the letter. (*Id*.) Plaintiff alleges in her Amended Complaint that RCS' "payment history failed to validate the amount of the alleged debt because it failed to provide itemizations and charges for the duration of the mortgage." (Am. Compl. ¶ 22, ECF No. 15 at Pg ID 173.)

On October 1, 2015, the Property was sold at a sheriff's sale to BNYM for $53,900.00. (*Id*. ¶ 25, Ex. H, ECF No. 16-8.) The Sheriff's Deed on Mortgage

Sale was recorded in the Wayne County Register of Deeds on October 9, 2015, at Liber 52513, Page 780.  (*Id.*)

Ditech sent a letter to Plaintiff, dated March 22, 2016, advising that the servicing of Plaintiff's account was transferred from RCS to Ditech on March 1, 2016.  (*Id.* ¶ 37, Ex. I, ECF No. 16-9.)  Ditech states in the letter that, as of March 22, 2016, the amount of the debt is $92,370.53.  (*Id.*)  Ditech also informs Plaintiff that unless she notifies Ditech within thirty days that she disputes the validity of the debt, or any portion the debt, Ditech will assume the debt is valid.  (*Id.*)

RCS and BNYM provide the following additional relevant factual background.  Specifically, Trott sent a letter to Plaintiff preceding the May 20, 2015 Notice of Foreclosure.  (Mot., Ex. D, ECF No. 19-4.)  In this letter, Trott informs Plaintiff that it represents RCS and was referred the matter to foreclose the Mortgage.  (*Id.*)  Trott's letter sets forth the total indebtedness as of the date of the letter ($97.091.74), but indicates the amount may vary from day to day because of interest.  (*Id.*)  The letter also provides the name of the creditor and to whom mortgage payments are made and advises Plaintiff that she has thirty days to dispute the debt and to request the name and address of the original creditor.  (*Id.*)  The letter advises Plaintiff that if she does not notify Trott within thirty days that she disputes the validity of the debt, or any portion thereof, Trott will assume the debt is valid.

Trott also sent a letter to Plaintiff dated September 22, 2015, responding to a phone call from Plaintiff in May 2015. (*Id.*, Ex. E, ECF No. 19-5.) According to the letter, at the time, Plaintiff verbally disputed the debt, but Trott "ha[d] not received any further details from [her] regarding [her] dispute." (*Id.*) Trott informs Plaintiff that RCS, as servicing agent for BNYM, reviewed her loan and confirmed the debt is valid. (*Id.*) Trott enclosed a payment history provided by RCS as evidence. (*Id.*) The attached payment history reflects activity from May 2005 through December 2013. (*Id.*)

## Applicable Law and Analysis

### The FDCPA Generally

"Congress enacted the FDCPA in order to eliminate 'the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.' " *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (quoting 15 U.S.C. § 1692(a)). "The statute is very broad, and was intended to remedy 'what [Congress] considered to be a widespread problem.' " *Id.* (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). The statute proscribes certain conduct by debt collectors and requires debt collectors to provide consumers with specific information under certain circumstances. *See* 15 U.S.C. §§ 1692b-1692j.

The Sixth Circuit has adopted the "least-sophisticated-consumer" test for analyzing whether a debt collector's practice is deceptive. *Lewis v. ACB Bus.*

*Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998).  This is an objective test, designed " 'to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.' " *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). " 'Although this standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.' " *Id*. at 509-10 (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000)) (brackets, internal quotation marks, and additional citations omitted).

## Plaintiff's Claim Against RCS and BNYM

Plaintiff alleges in her Amended Complaint that RCS and BNYM violated the FDCPA by "fail[ing] to validate the alleged debt of $97,191 in failing to respond to Plaintiff's August 19, 2015 letter."  (Am. Compl. ¶ 35, ECF No. 15.)  Although Plaintiff fails to identify the specific section of the FDCPA she claims these defendants violated, her allegations relate to § 1692g.  Under this provision, a debt collector must provide a consumer with the following information within five

days of the "initial communication"[2] unless the information is contained in the communication:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). In their pending motion, RCS and BNYM raise several arguments as to why Plaintiff's claim against them under this provision must be dismissed. The Court finds it necessary to address only two arguments.

First, RCS' initial communication with Plaintiff was on January 25, 2014. This letter contained everything required in § 1692g(a). Within thirty days of this

---

[2] The FDCPA does not offer a definition of the term "initial communication", although it defines "communication" to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a.

letter, Plaintiff did not notify RCS in writing that she was disputing the debt, or any portion of it, nor did she request the name or address of the original creditor.[3] Therefore, according to the plain language of the FDCPA, RCS was not obligated to provide further information to Plaintiff or cease collection of the debt.  Plaintiff asserts no other allegations to demonstrate a violation of the FDCPA.

Second, Plaintiff asserts no facts triggering BNYM's obligation to provide Plaintiff information.  Plaintiff does not allege in her Amended Complaint, and there is no evidence reflecting, an initial communication from BNYM to Plaintiff. When it communicated with Plaintiff, Trott never represented that it was acting on BNYM's behalf (to the extent such a representation even could be construed as a communication from the represented party).  As such, Plaintiff fails to allege facts suggesting that BNYM violated the FDCPA.

Plaintiff argues in response to RCS' and BNYM's motion that the FDCPA prohibits them from construing her failure to request validation of the debt as an admission of liability.  Plaintiff's allegations against these defendants in her Amended Complaint, however, is not that the debt was invalid.  She instead asserts that RCS and BNYM violated the FDCPA by failing to send her the required information after her timely validation request.

---

[3] Plaintiff, in fact, did not even request validation of the debt within thirty days of Trott's initial communication.  Plaintiff alleges only that she requested, through counsel, validation on August 19, 2015.  Trott's initial communication with Plaintiff was May 13, 2015.

For the reasons discussed above, Plaintiff fails to allege facts reflecting that she timely requested validation of the debt from RCS or BNYM to trigger the requirements of § 1692g. In short, Plaintiff's FDCPA claim against RCS and BNYM must be dismissed.

### Plaintiff's Claim Against Ditech

In her Amended Complaint, Plaintiff asserts that Ditech violated the FDCPA when it sent Plaintiff a letter on March 22, 2016, after the Property had been sold at the sheriff's sale, stating that the servicing of her account had been transferred to Ditech and that the amount of the debt as of the date of the letter was $92,370.53. (Am. Compl. ¶¶ 37, 38, ECF No. 15; *see also id.*, Ex. I, ECF No. 16-9.) Plaintiff fails to identify which specific provision of the FDCPA Ditech allegedly violated. In response to Ditech's motion to dismiss, she indicates that because "the mortgage and note no longer existed [after the sheriff's sale,]" Ditech violated § 1692f(1) of the FDCPA by seeking to collect an expired debt.

Section 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Subsection (1) provides as an example: "The collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). The loan agreement authorized the collection of the amount owed by Plaintiff, however. The question is whether Ditech was

14

required to verify the continued validity of the debt prior to sending Plaintiff its March 22, 2016 letter.

The Sixth Circuit has held that the FDCPA "does not require an independent investigation of the debt referred for collection." *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992). A debt collector is entitled to rely on the representations of its client in sending an initial communication to a consumer to collect on a debt. *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 921 (N.D. Ohio 2011) (citing cases); *see also Taylor v. Luper, Sheriff & Niedenthal Co.*, 74 F. Supp. 2d 761, 765 (S.D. Ohio 1999) ("Ordinary debt collectors are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due when they reasonably rely on information provided by their clients."). "The purpose of the validation notice required under § 1692g is to provide consumers with specific information, including a process by which to verify and contest an alleged debt. *Michael*, 825 F. Supp. 2d at 920 (citing *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). Ditech's March 22 letter to Plaintiff included all of the information required under the statute. In response, Plaintiff did not seek validation of the debt or dispute its validity due to the foreclosure. Instead, she simply filed suit against Ditech.

As such, Plaintiff fails to allege facts to support Ditech's liability for a violation of the FDCPA.  A reasonable unsophisticated consumer would not be misled where the notice spelled out a procedure for disputing the debt and seeking verification of the debt.  For these reasons, Ditech also is entitled to dismissal of Plaintiff's FDCPA claim against it.

## Conclusion

For the reasons set forth above, the Court concludes that Plaintiff fails to allege viable FDCPA claims against Defendants.

Accordingly,

**IT IS ORDERED** that Defendant Residential Credit Solutions' and the Bank of New York Mellon's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 19) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Ditech's Motion to Dismiss First Amended Complaint (ECF No. 18) is **GRANTED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: November 23, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 23, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury  
Case Manager